**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

SSI HOLDCO, INC.,                                )
a Delaware corporation,                          )
                                                 )
                    Plaintiff,                   )            Case No. 11-CV-568-GKF-FHM
                                                 )
v.                                               )
                                                 )
KENNETH R. MOURTON,                              )
                                                 )
                    Defendant.                   )

**OPINION AND ORDER**

Before the court is the Motion for Summary Judgment [Dkt. #11] of plaintiff SSI Holdco,

Inc. ("Holdco").  Plaintiff seeks summary judgment on its claim against defendant Kenneth R.

Mourton ("Mourton") for amounts owed pursuant to a personal guaranty.

**I. Material Facts**

Holdco made a secured loan to Sustainable Solutions, Inc. ("SSI") and related entities, in

the original principal amount of $8 million.  [Dkt. #11, Ex. 1, Note].[1]  The Note amended and

restated an earlier promissory note dated June 27, 2008.  [*Id.,* p. 1]. The maturity date of the Note

was June 30, 2011.  [*Id.*].  Under the terms of the Note, SSI and its related entities agreed to

make advance quarterly payments of the accrued and unpaid interest, with the first interest

payment to be paid on January 2, 2009, and subsequent interest payments to be paid on the first

business day of April, July, October and January thereafter until the maturity date of the Note.

[*Id.,* §§2, 3.1].  Section 4.1  of the Note provides:

---

[1]The exact date of execution of the Note is unclear.  The note bears the words "December __, 2008." [*Id.,* p. 1].

<u>Prepayment</u>.  All unpaid principal and unpaid accrued interest of this Note may be prepaid at any time without penalty, in whole or in part.  Any prepayment of this Note will be credited first against accrued interest, then principal.

[*Id.* § 4.1].  The Note was secured by earlier security agreements dated June 27, 2008, between the parties.  [*Id.,* § 5].  Under the terms of the Note, in the event of default, the outstanding principal and unpaid interest accrued under the Note were to become immediately due and payable, and Holdco reserved all rights or remedies available under the contract, at law or in equity.  [*Id.,* § 6.2].

On January 14, 2009, Holdco entered into an agreement with Mourton, SSI and its related entities and Sustainable Capital Ventures, LLC ("SCV")—a prospective purchaser of certain encumbered SSI equipment and common stock (the "Contract"). [Dkt. #11, Ex. 2].  Under the Contract, Holdco consented to the transfer of the assets subject to its continuing security interest. [*Id.,*§§ 1-5].  Mourton agreed to guarantee payment of four interest payments, plus any default interest thereon if such interest payments were not timely paid under the loan, as follows: $105,795.99 by July 1, 2009; $107,779.67 by October 1, 2009; $109, 800.54 by January 1, 2010; and $111,859.30 by April 1, 2010.  [*Id.,* §10].

Mourton executed a guaranty of the four interest payment obligations referenced in the Contract, plus default interest thereon at the rate of 17.5%. [Dkt. #11, Ex. 3, Guaranty, p. 1]. Additionally, he agreed, in the event of SSI's default, to pay reasonable attorneys' fees and costs of collection of the interest payments.  [*Id.*].  The four interest payments, default interest and attorneys' fees and costs of collection were identified, collectively, as the "Guaranteed Indebtedness." [*Id.*].

Under the Guaranty, in the event of a default under the Note, all of the Guaranteed Indebtedness then existing would, at the option of Holdco, immediately become due and payable from the guarantor.  [*Id.*].

The Guaranty stated, in pertinent part:

> All payments received from SSI, or on account of the Guaranteed Indebtedness from whatsoever source, until the interest payments herein described and guaranteed are satisfied, shall be taken and applied by Holdco toward the payment of the Guaranteed Indebtedness. Holdco shall apply all payments received by the undersigned, other than any amounts paid to it by the undersigned prior to July 1, 2009, to the payments of interest of the Note in the amounts above specified, and the undersigned's liability under this Guaranty shall, under no circumstances, exceed the sum of the amounts above listed plus any amounts paid by the undersigned at the time of the execution of this agreement.

> *   *   *

> No compromise, settlement, release or discharge of, or indulgence with respect to, or failure, neglect or omission to enforce or exercise any right against the undersigned or any other guarantors, nor the fact that at any time or from time to time, all the Guaranteed Indebtedness may have been paid in full, shall release or discharge the undersigned.

[*Id.*, p. 1-2].

The fourth interest payment, due April 1, 2010, was never made by SSI or Mourton. [Dkt. #11, Ex. 4, Invoice; Ex. 5, Lee Hansen Affid., ¶6].  The Note matured on June 30, 2011. [Dkt. #11, Ex. 1, ¶1; Ex. 4]. As of July 11, 2011, SSI owed Holdco principal and interest totaling $11,467,449.03. [Dkt. #11, Ex. 4].  Pursuant to the Guaranty, Mourton was invoiced for the fourth interest payment, plus default interest of $45,855.33, for a total of $159,468.19.  [*Id.*].

On August 15, 2011, Holdco conducted a public foreclosure sale of SSI's assets securing the Note.  [Dkt. #12, Ex. 1, Article 9 UCC Sale Report].  At the sale, Holdco credit bid the assets for $10,500,000.  [*Id.*].  Holdco received no cash as a result of the sale.  If the amount of the

credit bid is applied toward the total principal and interest SSI owes under the Note ($11,467,449.03), SSI still owes Holdco $607,890.85.

As of December 31, 2011, according to Holdco's records, the total amount Mourton owed on the Guaranty, together with default interest, was $181,456.19, plus attorney fees and costs.  [Dkt. #12, Ex. 5, ¶7].

Holdco seeks summary judgment that Mourton is obligated under the Guaranty to pay the outstanding interest payment, default interest and attorney fees and costs.  [Dkt. #12, Ex. 5, Hansen Affid., ¶6].  Mourton argues that Holdco's acquisition of the SSI assets extinguished his obligation to make the interest payment.[2]

## II. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Once a motion for summary judgment is properly made and supported, the opposing party has the burden to show that a genuine dispute exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1984).  The non-moving party must "identify sufficient evidence which would require submission of the case to a jury." *Jencks v. Modern Woodmen of America,* 479 F.3d 1261, 1264 (10th Cir. 2007).

## III. Analysis

It is undisputed that SSI defaulted on the note, and neither SSI nor Mourton made the fourth interest payment required under the Note, Contract and Guaranty.  Nor does Mourton challenge the reasonableness of the UCC sale of assets.   He argues, however, that Holdco was required to apply the $10,500,000 credit bid to satisfy his interest guarantee obligation before

---

[2] Although he did not file a motion for summary judgment, Mourton argues that he—rather than Holdco—is entitled to summary judgment on Holdco's claim. [Dkt. #12 at 4].

applying it toward the $8 million principal obligation, based on the following language from the Guaranty: "All payments received from SSI, or on account of the Guaranteed Indebtedness *from whatsoever source*, until the interest payments herein described and guaranteed are satisfied, shall be taken and applied by Holdco toward the payment of the Guaranteed Indebtedness." (emphasis added).

The court disagrees. Holdco made a credit bid. The UCC sale did not result in any "payment received" from SSI or a payment received "on account of the Guaranteed Indebtedness" from another source. Thus, Holdco was not contractually obligated to use the credit bid on the SSI assets to satisfy Mourton's guarantee obligations.[3]

However, the UCC imposes certain limitations on the liability of obligors such as Mourton.[4] If the security interest under which the disposition was made secured payment or performance of an obligation, then after application of the credit bid, Holdco was required to account for and pay the debtor any surplus and the obligor would be liable for any deficiency. 12AOkla.Stat. § 1-9-615(d). However, if the underlying transaction was a sale of accounts, chattel paper, payment intangibles, or promissory notes, the debtor was not entitled to any surplus and the obligor was not liable for any deficiency. 12A Okla. Stat. § 1-9-615(e). Thus, if the assets sold were accounts or other intangibles, then potentially, under § 1-9-615(e), Mourton

---

[3] Mourton also contends § 4.1 of the Note mandated that Holdco apply the amount of the credit bid toward the Guaranteed Indebtedness before applying it toward the principal owed. The court rejects this argument. By its clear language, § 4.1 applies to *prepayments* of amounts owed under the Note. The credit bid at the asset sale obviously was not a "prepayment." The Note was in default, as was Mourton's Guaranty.

[4] An "obligor" is defined under Article 9 as including "a person that, with respect to an obligation secured by a security interest in…the collateral:

* * *

(iii) is otherwise accountable in whole or in part for payment or other performance of the obligation."

12A Okla.Stat. § 1-9-102(59). Thus, Mourton is an obligor under the UCC.

would not be liable for any deficiency after application of the credit bid.  In short, his obligation to pay the Guaranteed Indebtedness would be discharged.

The Guaranty, though, contains the following waiver:

> No compromise, settlement, release or *discharge of*, or indulgence with respect to, or failure, neglect or omission to enforce or exercise any right against the undersigned or any other guarantors, nor the fact that at any time or from time to time, all the Guaranteed Indebtedness may have been paid in full, shall release or discharge the undersigned.

[Dkt. #11, Ex. 3, p. 1] (emphasis added).

The Guaranty language waived the protection against liability that § 1-9-615(e) would have otherwise afforded Mourton.  Waivers of suretyship defenses are enforceable.  *See Riverside Nat. Bank v. Manolakis,* 613 P.2d 438, 442 (Okla. 1980); *Black v. O'Haver,* 367 F.3d 361, 372 (10th Cir. 1977).

The court finds there is no genuine dispute that Mourton waived his UCC rights with respect to liability for the Guaranteed Indebtedness, and that he is obligated to pay the amounts claimed by Holdco.

## IV. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment [Dkt. #11] is granted.

ENTERED this 17th day of September, 2012.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT